## In re Heath's Estate.

1. **Practice: EVIDENCE: ABSTRACT.** It will be held that a certain decree of court, adjusting partnership affairs, was introduced in evidence before the referee, where his report is founded in part upon such decree and shows it must have been considered by him; and that all the evidence necessary for a determination of the errors assigned is presented by the abstracts.

2. **Estates of Decedents: APPOINTMENT OF REFEREE.** The Circuit Court has authority to appoint a referee to examine the accounts of an administrator and report thereon.

3. ————: ————: PRACTICE. The report of the referee has the force and effect of the verdict of a jury, and must be allowed to stand unless without support from the evidence.

4. ————: REPORTS OF ADMINISTRATOR. The orders of court approving the reports of the administrator, from time to time as made, must be regarded *prima facie* to be correct, and if claimed to be incorrect or fraudulent the burden of proof is upon the contestants to show such facts.

5. ————: ADMINISTRATOR: COSTS. The administrator may be required to pay all costs arising on the exceptions to his report, but not the costs of the settlement of the estate. There is no authority for charging the administrator with any costs, except such as he wrongfully makes.

*Appeal from Delaware Circuit Court.*

WEDNESDAY, APRIL 5.

JAMES HEATH died September 19, 1868, intestate, and soon thereafter F. B. Doolittle was appointed administrator of his estate. At the time of his death, Heath was a member of the partnership of Heath & Galpin, at Delhi, Delaware county, which firm had been for some time engaged in selling goods. At the time of Heath's death there was the usual stock of goods on hand, and a large amount of notes and accounts outstanding, for goods previously sold. The partnership was also largely indebted, the debts being mostly to wholesale merchants for goods purchased by the firm. There were some

individual assets of the deceased, and these were inventoried and charged to the administrator. The one-half interest in the firm was also inventoried and appraised, and a statement of the indebtedness of the firm was made. Upon an application made for that purpose, the court directed and ordered that the administrator should continue the partnership business, and subsequent orders were made by which the firm continued in business up to June 1871, when by a decree of the District Court, upon the application of Galpin, the surviving partner, the partnership was declared dissolved, and the rights of the parties thereto were determined by a referee appointed by the court. Previous to this, however, the administrator had made several progressive reports of his doings as administrator, in which he treated the estate's interest, in the partnership, as a proper subject of account. These reports continued to be made up to January, 1879, when the administrator filed his final report, from which it appeared that all of the debts of the estate had been paid, and that certain amounts had been paid to the widow and children of the deceased. No exceptions had been taken to any of the progressive reports, and at the time of filing the final report all of the children of the deceased were, and had been for some time, of full age. The progressive reports were all duly approved by the court when made. When the final report was made, the widow and children appeared by counsel, and filed elaborate exceptions thereto, by which it was sought to impeach the whole conduct of the administrator in the settlement of the estate. It was charged in said exceptions that the administrator had squandered and fraudulently converted the assets of the estate to his own use, and it was asked that he be required to account for several thousand dollars more than was shown to be due by his reports. A referee was appointed by the court to make an examination of the matter. It appears that a full trial and examination of the accounts were had before the referee, at which witnesses were examined. The referee made a report, by which he found the administrator should be charged

In re Heath's Estate.

with a balance of $674.73, and that he should pay the costs "of the hearing had in said matter." Exceptions were filed to this report by the administrator, and also in behalf of the heirs. The exceptions were all overruled, and the report of the referee was approved and confirmed by the court, and the administrator was required to pay the costs. Both parties appeal. The administrator having first appealed will be designated as appellant.

*Robinson & Powers* and *Blair & Dunham*, for appellant.

*I. A. Sullivan* and *E. M. Carr*, for appellees..

ROTHROCK, J.—I.  A question is made as to whether the decree of the District Court, by which the partnership was 1. PRACTICE: evidence : abstract. dissolved, and the partnership affairs adjusted, was introduced in evidence before the referee, and,. whether or not it is properly part of the record.  We think it should be held, to have been introduced in evidence. While the question as to its actual introduction in evidence is somewhat in doubt, yet the report of the referee, or part of it at least, is founded upon the decree, and it therefore must have been considered by him.

II.  It is strenuously urged that the evidence has not all been abstracted by appellant, and that although the abstract states that it is an abstract of all the evidence, yet that it shows upon its face that this is not true.  It is said the transcript contained some 2,700 pages.  It must be largely made up of extended items of account, and possibly of the books of the partnership, and many other matters which are wholly immaterial to be considered in determining the case.  Who is responsible for requiring the expenditure necessary to make such an enormous record we need not inquire.  In the view we take of the case we will consider it as though all the evidence, necessary to the determination of the errors assigned, is presented in the abstracts by the respective parties.

III.  Some question is made by counsel for appellant, as

In re Heath's Estate.

to the power of the court to appoint a referee, in proceedings of this character. We think the power is clearly conferred by Sec. 2412 of the Code, which provides that "in matters of accounts of executors the court shall have authority to appoint one or more referees who shall have all the powers and perform all the duties of referees appointed by the court in a civil action.

2. ESTATES of decedents: appointment of referee.

IV. The items which make up the amount, found to be due from the administrator, consist largely in alleged mistakes in not carrying forward certain items or charges against him, from one report to the succeeding reports. The finding of the referee is conceded by counsel for appellant to have the force and effect of the verdict of a jury. On its face, and on the face of the reports, the findings of the referee appear to be correct. Counsel for appellant claim, however, that the report of the referee is wholly without support from the evidence, and undertake to demonstrate this claim by certain figures and computations. On the other hand counsel for appellee makes a like demonstration, which he claims shows conclusively that the report of the referee is absolutely correct as to these items. We confess that we are utterly unable to determine which is correct, in view of the testimony of the administrator, in connection with the reports and accounts, so far as they are capable of being understood. It is proper to say that the attempt for several years to settle the affairs of the partnership in the probate court, and then the change made by attempting to drop the partnership affairs from the administrator's reports, created such confusion that nothing in connection with the matters in dispute is, or can be, reduced to certainty. We have therefore concluded to allow the report of the referee to stand, simply because we cannot say that it is without support from the evidence.

3. ——: ——: practice.

V. As to the exceptions to the report of the referee by the heirs, and their appeal, we have but to say that we can see no reason why the same was erroneously approved. The progressive reports made from time to time

4. ——: reports of administrator.

were approved by the court. In *Latham v. Myers*, 57 Iowa, 519, we held that orders of a probate court allowing a guardian certain charges, for the support of his wards, are to be regarded as binding upon the wards so far, at least, as to establish *prima facie* the right of the guardian to have credit for the sums allowed. So in this case, the orders approving the progressive reports must be regarded as correct, and it is incumbent on the heirs to show that they were incorrect and fraudulent, as claimed by them. We think the referee was warranted in finding from the evidence that no such showing was made.

VI. The order of the court below required the administrator to pay "all costs in the matter of the settlement of said estate, including all costs of contests of said final report." This, we think, was erroneous. The administrator should only be required to pay the costs occasioned by the contest arising upon the exceptions to his report. Indeed, we would have been better satisfied if the referee had apportioned the costs of the contest, as the contestants were successful in but one or two items of their exceptions. But we are not disposed to interfere with the discretion which he and the court below had the right to exercise. All the costs in the matter of settlement of the estate is quite another matter, however. There was no authority for charging up any costs to the administrator, excepting such as it was found he wrongfully made. The order of the Circuit Court will be modified so far as to require the administrator to pay the costs of the contest only. And this modification will require the heirs and contestants to pay the costs occasioned by this appeal.

MODIFIED AND AFFIRMED.

5. ——: administrator: costs.